**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **WINIFRED DAVIS,** | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:17-CV-3347-N-BH** |
| **v.** | § | |
| | § | |
| **MEGAN J. BRENNAN, POSTMASTER,** | § | |
| **U.S. POSTAL SERVICE, et al.,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings, evidence, and applicable law, *Defendant's Motion for Summary Judgment*, filed January 31, 2019 (doc. 49), should be **GRANTED**.

## I. BACKGROUND

Winifred Davis (Plaintiff), an African-American female born in 1951, filed this employment action against the Postmaster General of the United States Postal Service (USPS) (Defendant), and two employees of the USPS, Karl Stephens (Supervisor), and Greg Lambert (Manager), alleging discrimination based on disability, age, sex, race, color, and national origin. (doc. 3 at 1-2; doc. 11 at 1, 3; doc. 51 at 57,)[2]

### A.    Carrier Duties

Plaintiff began her employment with USPS in 1982 as a carrier. (doc. 51 at 57.) The primary duty of a carrier is delivering mail to residential and commercial addresses, which involves driving up to 6 hours a day, walking and standing most of the day, lifting and carrying up to 70

---

[1] By *Special Order No. 3-251*, this *pro se* case was automatically referred for full case management, including the determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

pounds intermittently and up to 35 pounds continuously, working outside in extreme temperatures and high humidity, and climbing and kneeling up to 2 hours per day.  (*Id.* at 12-13, 59, 154, 176, 266.)  USPS employees identified as "full duty" can perform the full range of duties for their position without restriction.  (*Id.* at 292.)  For the carrier position, a full duty employee must be physically able to case and carry (i.e., deliver) the assigned route.  (*Id.*)

In 1990, Plaintiff was diagnosed with an autoimmune condition known as myasthenia gravis (MG), (*id.* at 64, 69, 231), which substantially limited her ability to walk, drive, and be exposed to hot and cold weather, (doc. 11 at 4).  On December 13, 1991, her doctor opined that she was unable to perform the work of a full duty carrier and restricted her from driving, walking, standing, lifting/carrying, climbing/kneeling, working outside, and exerting energy. (doc. 51 at 65-69, 259-60.)

B.      **Procedures for Employees with Medical Restrictions**

USPS has a formal process for assigning work to employees who are unable to perform their position at the full duty level due to injury or illness.  (doc. 51 at 287-88.)  There are different procedures in place depending on whether the injury or illness is work-related or not. (*Id.*)

An employee who has a claim accepted by the Department of Labor's Office of Workers Compensation Program (OWCP) for an occupational illness or injury with medically defined work restrictions may be assigned "limited duty."  (*Id.* at 288, 292-93.)  Acceptance of a claim only entitles the employee to compensation for medical benefits for treatment of the accepted medical condition; it does not automatically entitle the employee to limited duty work.  (*Id.* at 292-93).

OWCP claims are overseen by the respective district-level USPS Health Resource Management (HRM) Office.  (*Id.*)  The HRM Office verifies for local management whether an

employee has an open accepted OWCP claim for the assignment of limited duty. (*Id.*) Only after OWCP has accepted a medical claim for which limited duty can be assigned may an employee request limited duty from local management, which then decides whether limited duty is awarded. (*Id.* at 288, 292-93.) OWCP determines what duties the employee can perform if he or she is approved for limited duty work. (*Id.* at 288.) Limited duty assignments can be temporary and can change based on changes in the employee's medical condition. (*Id.*) While employment records of limited duty are typically maintained at the HRM Office, local management has the discretion to keep copies. (*Id.* at 293.)

An employee with an injury or illness that is not job-related may request "light duty." (*Id.* at 287.) USPS's process requires the employee to make a formal request to local management and provide medical documentation that delineates his or her physical restrictions. (*Id.* at 193, 288.) If local management determines that there is work available in the employee's unit within his or her restrictions, the employee is offered the light duty assignment. (*Id.* at 288, 293.) A light duty employee must update his or her medical restrictions every 30 days, but the light duty authorization from local management cannot exceed 90 days in duration. (*Id.* at 9-10, 193.)

If an employee seeks light duty status beyond 90 days, he or she must formally request light duty through USPS's District Reasonable Accommodation Committee (DRAC). (doc. 51 at 10-11, 175, 182, 193, 288, 294) The employee must provide his or her most recent medical restrictions to DRAC, which then meets with the employee to determine if he or she may be accommodated. (*Id.* at 193, 288.) Employees approved for a light duty assignment for permanent injuries or illness must submit a medical update to local management at least once a year, but medical updates may be requested whenever the manager determines it to be necessary. (*Id.* at 193, 284.) Nevertheless, light

duty employees do not automatically receive work; rather, their work assignments are largely dependent on the availability of work within their medical restrictions. (*Id.*) A light duty employee will be "off the clock"[3] unless (1) there is available work and (2) that work is suitable given the employee's restrictions. (*Id.*)

## C.    Light Duty Assignments

On January 10, 1992, Plaintiff submitted a request for "permanent light duty within the medical limitations outlined by [her] attending physician" at the Inwood USPS station (Inwood) but was denied because no work within her restrictions was available.[4] (doc. 51 at 212-17.) On January 11, 1993, she submitted another request for permanent light duty, stating that she could lift, but not carry mail. (*Id.* at 208.) On January 19, 1993, she was notified that light duty work was available at Inwood, and that she would receive assignments from her supervisor "based on the daily availability of work within [her] restrictions." (*Id.* at 210.) She was advised that the light duty work was "temporary," and that she must update her restrictions by February 2, 1993. (*Id.*) Despite not being able to carry and deliver mail, Plaintiff's job position as carrier remained unchanged, and she continued working at Inwood performing clerical duties for several years. (*Id.* at 80-81, 206.)

On August 8, 2006, Plaintiff was placed "off the clock" and told that she could return to work if and when she was able to carry and deliver mail. (*Id.* at 199.) She subsequently filed a grievance requesting to return to work. (*Id.* at 206.) In response, local management explained that

---

[3] "When an employee is off the clock, he or she is still an employee on the payroll and can draw a salary only by using leave, but does not come to work and is not otherwise paid. The employee is not terminated, but rather is still available to be called for paid work when it becomes available." (doc. 50 at 10, n.2.)

[4] In 1992, Plaintiff also submitted a separate worker's compensation claim to OWCP, arguing that "factors of her federal employment" caused or aggravated her MG, but that claim was denied and ultimately affirmed on appeal. (doc. 51 at 219.) At her deposition, she admitted that MG was not an on-the-job injury. (*Id.* at 64.)

because Plaintiff was unable to carry mail or drive a government vehicle, there was no available "carrier work" she could perform given her medical condition. (*Id.*) While Plaintiff had been performing clerical work for several years, it was noted that USPS "had to pay grievances filed by the clerks for her doing their work." (*Id.*) On October 25, 2006, Plaintiff and USPS reached the following resolution:

> Once Ms. Davis produces proof of permanent light duty status, she will be entitled to compensation for the same number of hours that she averaged the six months prior to Aug. 8, 2006. She will resubmit her request for light duty, in accordance with Article 13 of the CBA. Initiation of back pay will be the responsibility of . . . [the] Labor Relations Specialist.

(*Id.* at 144.)

Plaintiff submitted a request to DRAC for permanent light duty, which was approved on February 2, 2007. (*Id.* at 148) Based on her medical restrictions, Plaintiff's assignment duties were noted as "AM/PM casing when available work." (*Id.*) She returned to work, but filed another grievance regarding her permanent light duty status. On June 22, 2007, Plaintiff and USPS reached the following resolution, in relevant part:

> As soon as Ms. Davis produces and presents documentation of her permanent light duty status to station management at the Inwood Station, she will be paid for the number of hours that she was averaging the six (6) months prior to August 8, 2006.

(*Id.* at 204.)

There were times in 2008 and 2009 when Plaintiff was placed off the clock because no light duty was work available. (*Id.* at 241-43, 257.) On March 12, 2008, Plaintiff sent a letter to the DRAC explaining that she had been placed off the clock since March 10, 2008, and "requesting assistance to return to the work [she] was doing in an approved settlement agreement." (*Id.* at 257.) The letter noted that she was "resubmitting [her] medical papers with this request." (*Id.*) There was

no resolution reached as to this request.  (doc. 50 at 11.)

On July 15, 2009, local management informed Plaintiff that there was no light duty work available based on her restrictions, and she was placed off the clock until October 3, 2009.  (doc. 51 at 245-48.)  Plaintiff returned to light duty work on October 5, 2009.  (*Id.* at 246.)  She filed a grievance arguing that there was work available for the period that she was off the clock. (*Id.* at 239, 245-48.)  Although it resulted in an impasse, she did not file a formal complaint. (doc. 50 at 11.)

## D.    Job-related Injuries

In 2009, Plaintiff was diagnosed with two on-the-job injuries resulting from the repetitive and strenuous work of a carrier over time: stenosis of the neck and back and trigger finger.  (doc. 51 at 71-74.)

On January 28, 2010, OWCP approved Plaintiff for only medical benefits based on her trigger finger and stenosis diagnoses.  (*Id.* at 276-77.)  On March 5, 2010, Plaintiff's physician determined that she could continue working as a carrier with the following restrictions: no driving, working outside, and climbing or kneeling, and limited to lifting only 10 pounds intermittently for 1 to 2 hours per day. (*Id.* at 266.)

On June 22, 2010, Supervisor prepared and signed an Offer of Modified Assignment (Limited Duty) that was signed by Plaintiff.[5]  (*Id.* at 234.)  On the same day, Supervisor sent her a letter informing her that he was unable to identify enough available necessary tasks within her medical restrictions for a full day of work, and that she needed to "complete a PS Form 3971 for the remainder of [her] workday."  (doc. 51 at 236.)

---

[5] It is unclear from the record whether Plaintiff was formally offered and accepted a limited duty assignment. Defendant claims that this worksheet was never completed because Plaintiff's OWCP claim was only approved for medical payments, and not limited duty status.  (doc. 50 at 12.) Plaintiff claims that she signed the form and had "worked pursuant to the job duties assigned on the Form." (doc. 61 at 22.)  Both claims are unsworn, however.

E.    **Pecking Order Policy**

In 2011, USPS implemented the National Reassessment Process (NRP), which set the rules for local management to follow for work assignments in which available work was identified and assigned to injured employees, limited duty employees with on-the-job injuries getting work priority.  (*Id.* at 26, 28, 158.)  When there is insufficient work at any given station for all of the employees, limited duty employees were entitled to receive work assignments before light duty employees. (*Id.* at 11-12, 181.)  This prioritization policy was known as the "pecking order." (*Id.*)

F.    **Placement Off the Clock**

In January 2011, Inwood merged with the USPS Northwest station (Northwest).  (*Id.* at 75.) Supervisor continued to be Plaintiff's first-line supervisor, and Manager became her manager (and her second-line supervisor).  (*Id.* at 47, 151, 173.)  Manager "had first-hand knowledge of the available work at [Northwest]." (*Id.* at 47, 88.)  Based on his review of the station's operational needs, he ultimately determined that Northwest did not have "enough work for everyone," especially "people with light duty." (*Id.* at 174.)

Before Manager could assign Plaintiff work, he needed to know whether she was light or limited duty to determine where she fell within the NRP pecking order.  (*Id.* at 174-75, 183.) Manager also needed to know Plaintiff's specific medical restrictions to determine how to place her and whether Northwest had work available within her restrictions.  (*Id.*)  Supervisor informed Manager that Plaintiff had medical limitations and was unable to carry or deliver mail, but he was uncertain as to her specific impairments and could not locate her medical paperwork. (*Id.* at 153-54.) Manager and Supervisor asked Plaintiff "numerous times" to provide them with paperwork that (1) documented her medical restrictions and limitations, and (2) showed whether she was light or

limited duty.  (*Id.* at 48, 174, 182.)  Plaintiff responded that USPS should already have this information, but admitted that she had "a light duty case not a limited duty case."  (*Id.* at 9-10, 174.) While Plaintiff stated she had access to the requested documents and initially agreed to provide them to Manager, she never did.  (*Id.* at 174.)

Manager subsequently contacted the Dallas HRM Office to determine whether Plaintiff had an open on-the-job injury case, but was told that she did not.  (*Id.* at 10, 17-18.)  Based on the available information, Manager determined that Plaintiff was not a "limited duty" employee and would be considered "light duty."  (*Id.* at 158.)  He advised Plaintiff that regardless of her duty status, she still needed to update her medical restrictions every 30 days.  (*Id.* at 9-10, 182-83, 269.) He informed her that if she wanted to extend her light duty status beyond 90 days, she needed permission from DRAC or she could not continue working light duty. (*Id.* at 11, 182-83.)  Plaintiff did not engage in the DRAC process.  (*Id.* at 182-83.)

Despite not providing her medical records, Plaintiff did tell local management that she could not carry any route, drive, or make any deliveries, and that she could not perform any carrier duties other than case mail.  (*Id.* at 176, 181, 189.)  Because there was no light duty work available within these restrictions, Manager asked her in March 2011 whether she would be willing to be a supervisor, but she declined. (*Id.* at 174, 269.)

Manager instructed Supervisor to place Plaintiff off the clock because (1) without the medical documentation, she could only be considered light duty and was last to receive assignments per the pecking order; (2) she refused to update her restrictions or go through DRAC, so the 90-day period of light duty had expired by April 2011; and (3) Northwest simply did not have enough work for her as a carrier within her physical restrictions. (*Id.* at 174-75, 182.)  Supervisor placed Plaintiff

off the clock on April 4, 2011, explaining to her that the decision to place her off the clock "was because of some paperwork that they had not received," and because they did not have work available for her. (*Id.* at 116, 120, 269.)

During this period, there were four carriers with medical restrictions that received limited duty assignments at Northwest. (*Id.* at 102-06.) All four carriers were black and over 40 years old. (*Id.*) Two of the carriers were male, and one of the carriers was older than Plaintiff. (*Id.*) All four carriers were able to carry mail. (*Id.*)

## G. Grievances and Charges

On April 7, 2011, Plaintiff filed a grievance with her union representative challenging her being put off the clock. (*Id.* at 251.) On April 29, 2011, the union representative notified Plaintiff that he withdrew her grievance because she failed to provide him with a statement about the incident or the paperwork he requested. (*Id.* at 251-53, 274.) She filed a charge against the union claiming the union representative "did not like her," but it was denied by the National Labor Relations Board on October 26, 2011. (*Id.* at 251.)

Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on August 8, 2011, and it issued a final decision on June 19, 2014 that did not include a finding of discrimination. (*Id.* at 24-30.) The decision was affirmed on appeal by the EEOC Office of Federal Operations (OFO) on December 7, 2016 (*Id.* at 33-37), and the OFO denied her request for reconsideration on March 29, 2017 (*Id.* at 42-44).[6]

## H. Procedural History

On December 11, 2017, Plaintiff filed this suit against Defendant, Supervisor, and Manager

---

[6]On February 2, 2019, Plaintiff accepted a limited duty assignment working four hours per day with restrictions. (doc. 61 at 3, 22.)

for employment discrimination based on disability under the Rehabilitation Act, age under the Age Discrimination in Employment Act of 1967 (ADEA), and sex, race, color, and national origin under Title VII of the Civil Rights Act of 1964 (Title VII). (docs. 3 at 1-2; 11 at 1, 3.) She alleges that she is disabled due to MG, as well as stenosis and trigger finger that resulted from "on the job injuries," and that her disabilities substantially limit her ability to walk, drive, and be exposed to hot and cold weather. (doc. 11 at 4.) She asserts that due to her disabilities, she is limited to "light duty" work, but Manager would not allow her to work within her limitations despite other carriers being permitted to work within their limitations. (*Id*. at 5-6.)

On July 30, 2018, Plaintiff's claims against Supervisor and Manager were dismissed with prejudice for failure to state claim. (doc. 41.) On January 31, 2019, Defendant moved for summary judgment. (doc. 49.) Plaintiff responded on February 28, 2019 (doc. 55), and Defendant replied on June 24, 2019 (doc. 65).

## II.  MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If it "bears the burden of proof on an issue, either because [it] is the plaintiff or as a defendant [it] is asserting an

affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[7] Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc);

---

[7] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

*Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### III. TITLE VII, ADEA, AND REHABILITATION ACT

Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The ADEA prohibits employment discrimination in both the private and local government sectors, and in federal employment." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citing 29 U.S.C. § 623(a) (private businesses and local governments); 29 U.S.C. § 633a (the federal government)). The Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, provides "the exclusive remedy for a federal employee alleging disability-based discrimination."[8] *Dark v. Potter*, 293 F. App'x. 254, 258 (5th Cir. 2008).

### A.    Framework

Claims for discrimination in the employment context are analyzed under a well established burden-shifting paradigm. "First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998); *see also Moss v. BMC Software Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)). She may establish a *prima facie* case of employment discrimination through either direct evidence, statistical proof, or the test established by the Supreme

---

[8] Discrimination claims brought under the Rehabilitation Act are governed by the standards applicable under Title I of the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. § 794(d); *Carter v. Ridge*, 255 F. App'x. 826, 829 (5th Cir. 2007).

Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.2007) (Title VII case); *Jackson v. CalWestern Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (ADEA case); *Cohen v. U. Tex. Health Science Ctr.*, 557 F. App'x 273, 277 (5th Cir.2014) (Rehabilitation Act). Under the *McDonnell Douglas* framework, a plaintiff must show that she (1) belongs to a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by or was treated less favorably than a similarly qualified individual outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802; *McCoy*, 492 F.3d at 556 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). To make a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must demonstrate that (1) she has a disability, (2) she was qualified for her job; (3) she worked for a program or activity receiving federal financial assistance; and (4) an adverse employment decision was made solely by reason of her disability. *See* 29 U.S.C. 794(a); *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993).

If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). "[T]he burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Moss*, 610 F.3d at 922 (citing *Berquist*, 500 F.3d at 349). If the employer articulates a legitimate, non-discriminatory reason for the employment decision,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the*

*Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).  Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols*, 138 F.3d at 566. Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).[9]

**B.      Prima Facie Case**

Defendant argues that she is entitled to summary judgment on all of Plaintiff's claims because she cannot satisfy all of the elements of a prima facie case of discrimination under Title VII, the ADEA, or the Rehabilitation Act.  (doc. 50 at 21-22.)

*1.      Similarly Situated Comparators*

Defendant argues that Plaintiff cannot make a prima facie claim of discrimination under Title VII and the ADEA because she has not identified similarly situated comparators outside of her protected class.  (doc. 50 at 22.)  Plaintiff responds that "she was discriminated against based on her race, color, national origin, sex, age, and disability when USPS placed her off the clock on April 4, 2011." (doc. 61 at 2.)  She alleges that she was "limited duty/light duty permanent," but local management would not allow her to work within her limitations although other limited duty carriers

---

[9]While the "ADEA does not authorize a mixed-motives claim of age discrimination" with respect to private-sector employees, *Hoffman v. Baylor Health Care Sys.*, No. 14-10258, 2015 WL 64849, at *3 n. 12 (5th Cir.2015) (per curiam), the Fifth Circuit "has not yet determined whether a but-for or motivating factor causation standard should apply to a federal employee's ADEA claim." *Logan v. Sessions*, 690 F. App'x 176, 179-80 (5th Cir. 2017) (citing *Leal v. McHugh*, 731 F.3d 405, 412 (5th Cir. 2013)); *see* 29 U.S.C. § 623 (private employees); *Id.* § 633a (public employees). Additionally, under the Rehabilitation Act, "discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (quoting *Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500, 503-04 (5th Cir. 2002)).  Because Plaintiff has failed to demonstrate a genuine issue of material fact under the less demanding "motivating factor" standard, it is not necessary to address the proper causation standard.

were reasonably accommodated by being allowed to work within their limitations.  (doc. 11 at 6.)
She identifies four limited duty carriers who were not placed off the clock.  (*Id.*)

As noted, to establish a prima facie case of discrimination on each of her protected grounds
under Title VII and the ADEA, Plaintiff must show that she was treated differently than similarly
situated employees. *See Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003).  "An
employee who proffers a fellow employee as a comparator must demonstrate that the employment
actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kansas City S. Ry. Co.*,
574 F.3d 253, 259-60 (5th Cir. 2009) (quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97
(5th Cir. 1991).  "The employment actions being compared will be deemed to have been taken under
nearly identical circumstances when employees being compared held the same job or
responsibilities, shared the same supervisor or had their employment status determined by the same
person, and have essentially comparable employment histories." *Id.* (citation omitted).  The Fifth
Circuit narrowly construes the "similarly situated" requirement.  *Silva v. Chertoff*, 512 F. Supp. 2d
792, 803 n.33 (W.D. Tex. 2007) (collecting cases).

Plaintiff identifies four similarly situated employees that were not placed off the clock
despite having medical limitations.  All four of these comparators are identified as black and
African-American and are therefore in her same protected categories for race and color, and national
origin.[10] Because Plaintiff has not identified a "similarly situated employee" outside these protected

---

[10] Though commonly confused with race, national origin refers to "the country where a person was born, or,
more broadly, the country from which his or her ancestors came." *Espinoza v. Farrah Mfg. Co.*, 414 U.S. 86, 88 (1973).
During her deposition, Plaintiff made no distinction between race, color, and national origin, and considered all black
individuals, including herself, as being both black and African-American.  (*See* doc. 51 at 98-100.)  Her discrimination
claims on the basis of national origin and race appear "so closely related . . . as to be indistinguishable." *See Bullard v.
OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981); *see, e.g., Caswell v. Fed. Express Corp.*, No. CIV.A.
3:00-CV-1757-L, 2002 WL 31927116, at *7 (N.D. Tex. Dec. 31, 2002) (finding plaintiff's race and national origin
claims "so closely related that a separate claim for national origin would merely duplicate his race claim").  Because she
failed to present either direct or indirect evidence that she was discriminated on the basis of national origin, race, or color,

classes, she cannot make out a prima facie case of discrimination. *See Jones v. FJC Sec. Servs., Inc.*, 40 F. Supp. 3d 840, 850-51 (S.D. Tex. 2014), *aff'd by* 612 F. App'x 201 (5th Cir. 2015) ("Similarly situated individuals must be 'nearly identical' and must fall *outside the plaintiff's protective class*.") (emphasis added) (citing *Wheeler*, 415 F.3d at 405). Her Title VII claims based on those three grounds fail as a matter of law.

As for age and gender, two of the four comparators are male, and three of the four comparators are younger than Plaintiff (albeit older than 40 years old). She has also not brought forward evidence to show that these individuals are similarly situated. All the comparators were assigned limited duty, and Plaintiff identifies no evidence showing that they failed to provide medical documentation or to comply with USPS's duty status process. Notably, all the comparators were able to perform the essential duties of a letter carrier, including delivering mail. Plaintiff, however, was assigned light duty and unable to perform the essential tasks of a letter carrier, even with reasonable accommodations. She has therefore not identified other employees outside her protected class under "nearly identical" circumstances who were not placed off the clock. Because Plaintiff has not identified a comparable employee who was a light duty letter carrier unable to carry and deliver mail but was not placed off the clock, she has not raised a factual dispute material to deciding whether she was treated less favorably than similarly situated employees outside her protected class. *See Gilbert v. Brookshires Grocery, Co.*, 354 F. App'x 953, 954 (5th Cir. 2009) (finding that plaintiff was not similarly situated to another employee where he presented no evidence that the other employee's "position, duties, qualifications, or pay rate were similar" to his). Accordingly, her Title VII and ADEA claims fail as a matter of law.

---

she failed to raise a genuine issue of material fact supporting each distinct claim.

## 2. *Qualified Individual*

Defendant next argues that Plaintiff cannot bring forward evidence to show that she was qualified because she could not perform the essential functions of her full duty carrier position with or without reasonable accommodation. (doc. 50 at 24-25).

Being qualified for the position is a prima facie element of employment discrimination under Title VII, the ADEA, and the Rehabilitation Act. In order to be qualified, an employee must show that she "can perform the essential functions of the employment position" that she holds or seeks "with or without reasonable accommodation." 42 U.S.C. § 12111(8); *see* 29 C.F.R. § 1630.2(m), (n). The Fifth Circuit has adopted a two-part test to determine whether an employee is qualified. *Chandler*, 2 F.3d at 1393. First, a court must determine whether the employee "could perform the essential functions of the job i.e. functions that bear more than a marginal relationship to the job at issue." *Id.* Second, if the court concludes that she cannot perform the essential functions of the job, it "must determine whether any reasonable accommodation by the employer would enable [her] to perform those functions." *Id.* at 1393-94. The plaintiff bears the burden of requesting reasonable accommodations. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). A plaintiff will avoid summary judgment on whether she is a qualified individual if she can show "1) that [s]he could perform the essential functions of the job in spite of h[er] disability or 2) that a reasonable accommodation of h[er] disability would have enabled h[er] to perform the essential functions of the job." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093-94 (5th Cir. 1996).

According to the official USPS job description, the functional purpose of a carrier is to "deliver[] and collect[] mail on foot or by vehicle under varying road and weather conditions in a prescribed area. . . ." (doc. 51 at 50.) The position involves driving up to 6 hours a day, walking

and standing most of the day, lifting and carrying up to 70 pounds intermittently and up to 35 pounds continuously, working outside in extreme temperatures and high humidity, and climbing and kneeling up to 2 hours per day. (*Id.* at 12-13, 59, 154, 176, 266.) As a result of her MG diagnosis, Plaintiff was restricted from driving, walking, standing, lifting/carrying, climbing/kneeling, working outside, and exerting energy. (doc. 51 at 65-69, 259-60) In 2009, she was also diagnosed with stenosis of the neck and back and trigger finger. (*Id.* at 71-74.) Her medical restriction documentation from March 2010 noted that her multiple medical conditions limited her ability to drive, work outside, and climb/kneel at all, and she could lift only 10 pounds intermittently for 1 to 2 hours per day. (*Id.* at 266.) Plaintiff admitted in her deposition that she could not perform the duties of carrying and delivering mail in 2011. (*Id.* at 81-82.)

Defendant has met her summary judgment burden by identifying evidence of record showing that Plaintiff was not qualified to perform the essential functions of a carrier, with or without reasonable accommodations. *See Celotex Corp.*, 477 U.S. at 323. The burden now shifts to Plaintiff to direct the court's attention to evidence in the record establishing a genuine issue of material fact that she was able to perform these duties. *Id.* at 324. She must "go beyond the pleadings" and point out "specific facts" to show that there is a genuine issue of fact. *Id.*

Plaintiff admits that since her MG diagnosis in 1990, she had been "unable to perform the work of a carrier without accommodation." (doc. 61 at 4.) She also admits that after she was diagnosed with stenosis of the neck and back and trigger finger, her "multiple conditions limited her ability to drive, work outside, and climb/kneel at all, and she could lift only 10 lbs. intermittently for a mere 1 to 2 hours per day." (*Id.* at 6.) Plaintiff does not dispute the fact that carrying and delivering mail are essential functions for the letter carrier position.

Although Plaintiff essentially concedes that she was not qualified for the full duty position of carrier, she contends that USPS previously accommodated her for several years with a modified position limited to only casing mail. (doc. 61 at 13.) An employer's prior accommodation does not establish the reasonableness of that accommodation or that an employee was qualified with that accommodation, however. *See Lopez v. Tyler Refrigeration*, 207 F.3d 657 (5th Cir. 2000) (noting because employer's prior accommodation which exempted employee from performing an essential function of the job was an unreasonable accommodation, it did not raise a genuine fact issue as to whether employee was "qualified" under the ADA) (citing *Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998)*; see, e.g., Magnant v. Panelmatic Texas, Inc.*, No. CIV.A. H-05-0135, 2006 WL 2434475, at *14 (S.D. Tex. Aug. 22, 2006) ("The fact that Panelmatic had made a previous accommodation to Magnant in providing some light-duty work and allowing other technicians to assist in heavy lifting does not establish the reasonableness of that accommodation or that Panelmatic was required to continue that accommodation indefinitely.") (citing *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997)); *Wade v. Brennan*, No. CIV.A. 13-5442, 2015 WL 3849310, at *14 (E.D. La. June 22, 2015), *aff'd by* 647 F. App'x 412 (5th Cir. 2016) (rejecting employee's argument that "her long-term, modified light duty is the job that should be considered to determine whether she was qualified for her job"). "Reasonable accommodation is an element of a prima facie case of discrimination under the [Rehabilitation Act], and [the plaintiff] thus bears the burden of proof of reasonableness." *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).

Because it is undisputed that carrying and delivering mail are essential functions of the carrier position, Plaintiff cannot show that eliminating these functions from her job requirements is

a reasonable accommodation. *See Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998) ("As a matter of law, it is an unreasonable accommodation for the employer to have to exempt the employee from performance of an essential function of the job.") (citation omitted); *Barber v. Nabors*, 130 F.3d 702, 709 (5th Cir. 1997) ("We cannot say that [the employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions"). Further, Plaintiff does not allege that a "casing-only" position was available, or that there was another open position that she qualified for as a reasonable accommodation. *See, e.g., Nesmith v. Speer*, No. 2:16-CV-491, 2019 WL 2554124, at *10 (S.D. Tex. Feb. 13, 2019) ("The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodation, perform.") (citation omitted), *adopted by* 2019 WL 1237073 (S.D. Tex. Mar. 18, 2019). Under the Rehabilitation Act, there is no obligation for an employer to create a brand new position as an accommodation to a disabled employee. *See Chandler*, 2 F.3d at 1393-94. "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997). Plaintiff has not brought forward evidence to show that the prior accommodations by USPS were reasonable, or that any other reasonable accommodation would have enabled her to perform the essential functions of her letter carrier position. *See, e.g., Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) ("Since one of the essential duties of any firefighter is to fight fires, if Burch cannot perform that duty, then he cannot be reasonably accommodated as a matter of law.") (citation omitted).

Plaintiff also argues that the fact that she returned to work at USPS on February 2, 2019, shows that she is a qualified individual. (doc. 61 at 22-23.) The issue is not whether she was *ever*

qualified for the carrier position, but whether she qualified at the time she was placed off the clock. *See Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) ("We do not question whether Moss was qualified for his job prior to taking leave, instead the question is whether he was qualified at the time of his termination.") (citations omitted); *see, e.g., Gonzalez v. United Parcel Serv., Inc.*, No. 5:15-CV-986-RCL, 2018 WL 4699274, at *10 (W.D. Tex. Sept. 28, 2018) ("The question here is not whether Gonzalez was *ever* qualified for his position, but rather whether he was qualified at the time of his termination.") (emphasis original), *aff'd sub nom. by* No. 18-50903, 2019 WL 3491686 (5th Cir. July 31, 2019).

Plaintiff has failed to identify a fact issue material to the determination of whether she could perform the essential functions of her job when she was placed off the clock. Because she was unable to perform the essential functions of her job, and no reasonable accommodation by USPS would have allowed her to do so, Defendant is entitled to summary judgment on this claim. *See Celotex Corp.*, 477 U.S. at 322-23.

    *3.    No Motivating Factor*

Defendant also moves for summary judgment on grounds that Plaintiff cannot bring forward evidence showing that her protected characteristics were a motivating factor in her off the clock placement. (doc. 50 at 27-28.) When deposed, she admitted that she did not have any evidence that her protected characteristics factored in her placement off the clock; it was simply her belief that she was being discriminated against. (doc. 51 at 97-99.) Defendant has pointed out an absence of evidence showing that Plaintiff's protected characteristics were a motivating factor for her being placed off the clock, and therefore has met her burden. *Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue

of material fact that the alleged adverse actions were motivated by her disability. *See Vela*, 276 F.3d at 666. Plaintiff did not respond to this argument or point to any evidence that the decision to place her off the clock was motivated by discriminatory animus. *See Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (holding that a plaintiff's "own self-serving generalized testimony stating her subjective belief that discrimination occurred . . . is simply insufficient to support a jury verdict in plaintiff's favor"). Plaintiff has failed to meet her burden, and Defendant is entitled to summary judgment on Plaintiff's discrimination claims on this basis as well.

## C.    Legitimate Non-Discriminatory Reason

If an employee establishes a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

Even if Plaintiff could establish a prima facie case of discrimination, Defendant proffers evidence showing a legitimate non-discriminatory reason for placing her off the clock. Manager's affidavit testimony is sufficient for a reasonable jury to conclude that USPS placed Plaintiff off the clock because there was not enough carrier work available within her physical restrictions, and as a light duty employee, she was last to receive assignments under the NRP pecking order. (*See* doc. 51 at 173-74, 182.) Defendant has met her burden of production, and the burden now shifts to Plaintiff to raise a genuine issue of material fact by showing either that the proffered reasons are a pretext for discrimination, or that her protected class status was a motivating factor in USPS's adverse action.

## D.    Pretext/Mixed-Motive

Defendant argues that Plaintiff cannot as a matter of law meet her burden of proof at the pretext stage because she cannot provide evidence showing that her placement off the clock was based on discrimination or that reasons provided were false. (doc. 51 at 29-31.)

As discussed, to establish pretext, a plaintiff "must put forward evidence rebutting each of the non-discriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citation omitted) (internal quotation marks omitted). A plaintiff will not establish pretext by relying solely on her subjective belief that discrimination has occurred. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997).

Plaintiff argues that there are several "inconsistencies" when considering the summary judgment evidence of USPS's procedures for status duty assignments and how her situation was handled.[11] (doc. 61 at 7-29.) She contends that Defendant's stated reason that she failed to provide her medical records to Manager was pretextual because he already knew that she had medical limitations, and USPS had "ample proof" of her restrictions. (*Id.* at 6.) She also contends that there was a locked file cabinet at Inwood that contained employee medical records, so the claim that her medical records were missing was false. (*Id.* at 10-11.) She contends that the claims that her OWCP

---

[11] Plaintiff's response included hundreds of pages of exhibits, but it failed to cite to the exhibit page number or provide a means of identifying the record evidence of each of these inconsistencies. (*See* docs. 61, 62, 63, 64.) As noted, courts are under no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *See Adams*, 465 F.3d at 164. (quoting *Ragas*, 136 F.3d at 458) (noting the responding party on summary judgment must "identify *specific evidence* in the record" supporting challenged claims and "articulate the *precise manner* in which that evidence supports [those] claim[s]"); *see also Armstrong v. Boehringer Ingelheim Pharms., Inc.*, No. 3:08-CV-1458-O, 2010 WL 2540751, at *3 (N.D. Tex. June 21, 2010) ("The Fifth Circuit established almost thirty years ago that '[j]udges are not ferrets' under Rule 56. The Fifth Circuit has more recently reiterated that '[j]udges are not like pigs, hunting for truffles buried in briefs.'") (internal citations omitted).

case had been closed and that she did not have an accepted OWCP claim for limited duty are false. (*Id.* at 11-13.) These unsworn allegations are entirely speculative and are not corroborated by any evidence in the record, however. Without more, they are insufficient to show that USPS's proffered reason for placing Plaintiff off the clock was mere pretext. *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

Plaintiff also alleges that local management did not comply with USPS procedures when handling her light duty/limited duty requests, and the decision to reject her light duty request was incorrect. (doc. 61 at 12-17.) She maintains that Manager was required to see if there was light work available and decide whether she could do that work, but he testified that he only checked whether she had the proper medical documentation and did not actually see if light duty work was actually available. (*Id.*) The undisputed summary judgment evidence shows that Manager could not approve light duty work indefinitely, however, and he had already permitted her 90 days of light duty work before she was placed off the clock in April 2011. (doc. 51 at 175.) Nevertheless, evidence that Manager's reason for putting Plaintiff off the clock was faulty is not the same as evidence demonstrating that the reason for placing her off the clock was false or unworthy of belief. *See Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 F. App'x 917, 924-25 (5th Cir. 2009) (per curiam) ("The plaintiff has not necessarily proven pretext by showing the facts underlying the employer's reason for the adverse employment action are factually incorrect."); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification.").

"The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1997). Notably, Plaintiff admits in her deposition testimony that she has no tangible evidence of discrimination. (doc. 51 at 96-102.)

Plaintiff fails to provide any evidence, either circumstantial or direct, that permits a reasonable jury to believe that Defendant's reason for placing her off the clock was false and that illegal discrimination was the actual reason, or that her protected characteristics were a motivating factor for her being placed off the clock. Because Plaintiff has failed to identify any evidence of pretext or discriminatory motive, summary judgment should be granted in Defendant's favor with respect to her Title VII, ADEA, and Rehabilitation Act discrimination claims.

## IV. RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED**, and all of Plaintiff's claims should be **DISMISSED with prejudice.**

**SO RECOMMENDED** on this 22nd day of August 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE